**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTINA CAMBRIA, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | NO. 03-cv-5605 |
| ASSOCIATION OF FLIGHT ATTENDANTS, | : | |
| AFL-CIO, | : | |
| Defendant | : | |

**MEMORANDUM**

**Baylson, J.**                                                        **June 30, 2005**

**I.      Introduction**

Plaintiff, Christina Cambria, ("Plaintiff") was formerly a flight attendant employed by

USAirways, Inc. ("USAir").  In her Amended Complaint, Plaintiff claims that Defendant

Association of Flight Attendants ("AFA"), a labor union, violated her rights in connection with

grievance proceedings against USAir in which she was represented by Defendant.  Presently

before this Court is Defendant's Motion for Summary Judgment, pursuant to Federal Rule of

Civil Procedure 56.  For the reasons set forth below, the Defendant's motion will be granted.

**II.      Background**

   **A.      Procedural Background**

        On September 9, 2003, Plaintiff filed a Complaint in the Court of Common Pleas of

Philadelphia County alleging that Defendant, a labor union, breached its duty of fair

representation.  On October 8, 2003, Defendant removed this case to federal court stating that

Plaintiff's claim arises under the Railway Labor Act, 45 U.S.C. §§151-188.  (Def's Notice of

Removal at 2).  With permission of the Court, Plaintiff filed an Amended Complaint on June 8,

2004 alleging Defendant violated her rights under the Americans with Disabilities Act ("ADA"),

42 U.S.C. §12101, et seq; the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, et

seq.; and the Pennsylvania Labor Relations Act ("PLRA"), 43 P.S. §211 et seq. in connection

with a grievance she had filed against USAir in which she was represented by Defendant.

Defendants filed an Answer on June 28, 2004.

The case was referred to Magistrate Judge Caracappa of this Court, who held a lengthy

settlement conference on July 20, 2004.  At the conclusion of this conference, defense counsel

wrote a letter dated July 21, 2004 to Plaintiff's counsel, asserting that the parties had reached an

agreement on a settlement and summarizing the terms.  On August 11, 2004, the parties agreed to

put the case in suspense in order to pursue settlement options.  Plaintiff's counsel at the

settlement conference before Judge Caracappa did not promptly respond to the asserted

confirmation of the settlement as stated in Defendant's letter of July 21, 2004 for several months.

On January 24, 2005, the case was removed from suspense and returned to the Court's active

docket.

On February 1, 2005, Defendant filed a Motion to Enforce the Settlement Agreement as

outlined in the letter of July 21, 2004.  Relying heavily on a letter from Magistrate Judge

Caracappa dated December 13, 2004, advising the undersigned that the settlement conference

held on July 20, 2004 "has been unsuccessful in assisting the parties in an overall resolution of

this matter . . . we have continued with counsel and held follow-up settlement discussions,

however, final settlement has not been reached," the Court denied Defendant's Motion to

Enforce on April 5, 2005.

On March 31, 2005, Defendant filed a Motion for Summary Judgment.  Plaintiff filed a

Response on April 21, 2005.  Defendants filed a Reply on May 10, 2005.  Oral Argument was held on June 7, 2005.

### B.    Allegations

#### 1.    Count I

Count I claims that Defendant AFA violated the PLRA and breached its duty of fair representation in connection with the grievance process challenging Plaintiff's termination. (Amended Complaint at ¶¶20-23).  Plaintiff claims that Defendant acted in bad faith and in a discriminatory fashion when it refused and failed to submit Plaintiff's grievance and forced Plaintiff to sign a release and resign from her position solely because of her disability.  Id. Plaintiff claims she has suffered damages in the form of the loss of her rightful opportunity to seek reinstatement, loss of earnings, severe emotional and psychological distress, loss of self-esteem, and loss of future earning power.  Id. at ¶23.  Plaintiff requests relief in the form of back pay, front pay, and interest.  Id.

#### 2.    Counts II and III

Count II claims that Defendant violated the ADA when it discriminated against Plaintiff because of her "Major Depressive Disorder" in connection with grievance proceedings.  Id. at ¶25.  As a result, Plaintiff claims that she suffered emotional distress, humiliation, embarrassment, loss of self-esteem, loss of earnings, and loss of future earning power.  Id. at ¶26. Plaintiff seeks compensatory damages, back pay, front pay and interest.  Id. at ¶¶26, 30.  Plaintiff also requests punitive damages under the ADA, pre- and post-judgment interest, costs of suit, attorney and expert witness fees, and such other relief that is just and proper.  Id. at 30.  Count III is a parallel state law claim asserting that Defendant violated the PHRA when it discriminated

against Plaintiff because of her disability.[1]  Id. at ¶¶27-29.

> **C.     Factual Background**

A brief summary of the pertinent facts follows.

Plaintiff is a former flight attendant of USAir.  She was employed by USAir from February 1989 until October 17, 2001, the date of her termination.  She maintained a satisfactory job performance rating during that time up until she altered a medical invoice that she submitted in connection with a workers compensation claim.  (See Pl's Response at 2; Pl's Ex. B: termination letter; Pl's Ex. D: Pl's Dep. at 41; Def's Memo at 2).

Defendant AFA, an unincorporated labor organization, is the collective bargaining representative for certain employees of USAir, including Plaintiff.  (See Pl's Ex. C: Flight Attendants Union Agreement).

On February 26, 2001, Plaintiff suffered an on-the-job injury for which she submitted a workers compensation claim.  (Pl's Dep. at 39).  Plaintiff admitted to falsifying the medical bill relating to the work-related injury.  Id. at 58:2-16; 70:11-13.  As a result, USAir terminated Plaintiff's employment for providing false information to the company.  Id. at 59:20-60:5; see also Pl's Ex. B: termination letter from USAir.  The union grieved Plaintiff's termination in a letter dated October 19, 2001.  (Pl's Ex. H: letter from AFA to US Air).

On October 22, 2001, Plaintiff admitted herself into the Fairwinds Treatment Center, a

---

[1] The Court notes that Plaintiff's claims under the ADA and PHRA are presented separately in the Complaint but are both captioned "Count II."  To avoid confusion, the Court will refer to the ADA claim as Count II and the PHRA claim as Count III.

Further, although Plaintiff brings her claim for disability discrimination under both the ADA and the PHRA, the Court will only discuss Plaintiff's ADA claim, because the analysis is identical for both.  See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).

psychiatric treatment center.  Pl's Dep. at 29-32; 62).  She remained there until December 3, 2001.  (See Pl's Ex. E: Discharge Summary; Pl's Response at 4).

A grievance hearing was held on December 19, 2001 and Plaintiff attended.  (Pl's Ex. J: letter from Robert Fuhr, Senior Director of Inflight Services, to Plaintiff; Pl's Response at 4).  At the hearing, Plaintiff admitted that she altered the medical bill relating to her workers compensation claim.  (Pl's Response at 4; Pl's Ex. J).  As a result, USAir denied the grievance and upheld the termination in a letter dated January 7, 2002.  (Pl's Ex J).  In a letter dated January 23, 2002, Defendant AFA submitted Plaintiff's grievance to the USAirways Flight Attendant System Board of Adjustment for arbitration.  (Soler-Bryant Dep. at 10:13-16; Pl's Response at 5; Pl's Ex. R: letter from AFA to USAir).  A hearing was scheduled for November 6, 2002.  (Soler-Bryant Dep. 10:20-23; Pl's Response at 5).

On October 23, 2002, Plaintiff met with AFA staff attorney, Stephani Brown, and USAir Master Executive Council Grievance Chair, Aida Soler-Bryant to prepare for the arbitration.  (Pl's Dep. at 110:8-16; Def's Memo at 4).  Prior to the meeting, both Brown and Soler-Bryant knew that Plaintiff had been previously admitted to a psychiatric facility.  (Def's Memo at 4; Pl's Ex. S at 11-12).  At the meeting, Brown and Plaintiff discussed, inter alia, Plaintiff's medical condition.  (Def's Memo at 4; Pl's Dep. at 124:5-9).  Before the meeting ended, Plaintiff advised Brown that she (Plaintiff) had a felony shoplifting conviction on her record.  (Pl's Dep. at 114:12-13; Def's Memo at 5; Brown Dep. at 33-34).  Brown told Plaintiff that if she had a felony conviction on her record USAir would not be able to re-employ her as a flight attendant.  (Pl's Dep. at 114:9-17; Def's Memo at 5; Brown Dep. at 37:9-20; Pl's Ex. T: USAirways memo).  Brown advised Plaintiff that she could resign rather than risk losing the arbitration and having a

termination on her record.  (Pl's Dep. at 112:17-20; Pl's Ex. S: Dep. of Brown at 38:12-39:15).

Plaintiff said she would resign.  (Pl's Dep. at 124:2-4; Pl's Ex. S: Brown Dep. at 40:23-41:4).

The arbitration scheduled for November 6, 2002 was canceled.  (Soler-Bryant Dep. at

44:13-19).  Plaintiff signed her resignation on January 23, 2003.  (Pl's Dep. at 127:7-9; Pl's Ex.

V: Resignation Agreement).  After receiving Plaintiff's executed resignation, Defendant

withdrew Plaintiff's grievance.  (Pl's Response at 9; Pl's Ex. W: letter from Soler-Bryant to

USAir).  Attorney Brown did not seek a last chance agreement for Plaintiff.  (Brown Dep. Tr. at

78:2 - 81:9).

It is undisputed that Plaintiff has been diagnosed with bipolar disorder.  (Def's Memo at

16; Pl's Dep. at 21).  The parties also agree that a person diagnosed with bipolar disorder is

disabled within the meaning of the ADA when the mental impairment substantially limits a

major life activity.  (Def's Memo at 14; Pl's Response at 18).

## III.    Jurisdiction

This Court maintains jurisdiction in this matter under 28 U.S.C. § 1331, through the

operation of various provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§12101, et seq.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367, to

consider Plaintiff's claims arising under the Pennsylvania Human Relations Act ("PHRA"), 43

P.S. §951, et seq., and the Pennsylvania Labor Relations Act ("PLRA"), 43 P.S. §211 et seq.

## IV.    Legal Standard

Summary judgment may be granted only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A

genuine issue of material fact exists when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986). When considering a motion for summary judgment, the court must view all evidence in

favor of the non-moving party. <u>Bixler v. Central Pennsylvania Teamsters Health & Welfare</u>

<u>Fund</u>, 12 F.3d 1292, 1297 (3d Cir. 1993). Accordingly, all doubts must be resolved in favor of

the non-moving party. <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 (3d Cir. 1983), <u>cert.</u>

<u>denied</u>, 465 U.S. 1091 (1984). To successfully challenge a motion for summary judgment, the

non-moving party must be able to produce evidence that "could be the basis for a jury finding in

that party's favor." <u>Kline v. First W. Government Sec.</u>, 24 F.3d 480, 485 (3d Cir.), <u>cert. denied</u>,

513 U.S. 1032 (1994).

## V.      Contentions

### A.      Count I

Defendant moves for summary judgment on the grounds that there is no duty of fair

representation under the PLRA; or, alternatively, that Plaintiff has failed to present sufficient

facts to warrant a trial on the issue of whether Defendant AFA violated its duty of fair

representation. Thus, Defendant argues that Count I of the Amended Complaint should be

dismissed.

Defendant relies on various exhibits including portions of the Collective Bargaining

Agreement; the depositions of Plaintiff and Stephani Brown, senior staff attorney for Defendant

AFA; the telephonic deposition of Aida Soler-Bryant, Master Executive Council grievance chair

for USAir and Defendant AFA; a letter dated October 19, 2001 from USAir to Plaintiff

explaining reason for termination; Plaintiff's Resignation Agreement; and various other letters.

Defendant's primary argument is that a union is afforded a wide range of reasonableness in servicing its members' needs.  (Def's Memo at 7, citing Hines v. Anchor Motor Freight, Inc., 424 U.S. 554 (1976)).  In addition, a claim of unfair representation is only proven by an actual showing of bad faith or arbitrary conduct.   Riley v. Letter Carriers Local, 668 F.2d 224, 228 (3d Cir. 1981); Vaca v. Sipes, 386 U.S. 171, 190 (1967) ("A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.").  Defendant argues that Plaintiff has not presented any facts to suggest that AFA acted in bad faith or in an arbitrary or discriminatory manner.  Defendant contends that the evidence only shows that AFA exercised its discretion in Plaintiff's grievance proceedings and that their actions were reasonable.  (Def's Memo at 6-8).  Because a union has wide discretion in the context of grievance proceedings, AFA argues that it is entitled to summary judgment.  (Def's Motion at 6-7).

Plaintiff responds that she has produced sufficient facts to create a genuine issue of material fact whether Defendant's conduct in handling her grievance was arbitrary, discriminatory or in bad faith, and that a reasonable jury could conclude that AFA breached its duty of fair representation.  (Pl's Response at 12).  Specifically, Plaintiff states that Defendant failed and refused to provide Plaintiff with legal representation to challenge her termination solely because Plaintiff has bipolar/major depressive disorder.  Id. at 12-13.

Plaintiff argues that there exist several genuine issues of material fact that would affect the outcome of the suit, including:

> 1.    Whether Defendant violated a duty of fair representation or whether it was

reasonable that Defendant did not pursue an "impaired judgment" defense on Plaintiff's behalf to challenge the termination or pursue a second chance agreement.

2.     Whether Defendant's actions were discriminatory because they were based on Plaintiff's disability in violation of the ADA and in breach of Defendant's duty to provide fair representation.

3.     Whether Defendant exercised or abused its discretion in handling Plaintiff's grievance proceedings.

(Pl's Response at 12-15).

## B.     Counts II and III

Defendant also moves for summary judgment on Counts II and III on the grounds that there is no genuine issue of material fact that Plaintiff has failed to make a prima facie case of discrimination under the ADA and PHRA.

Defendant agrees that Plaintiff has been diagnosed with bipolar disorder, which is a mental disability within the meaning of the ADA, when it substantially limits a major life activity.  (Def's Memo at 14-16) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).  Defendant argues that Plaintiff has not presented any evidence that her mental impairment substantially limits a major life activity.  Defendant argues that Plaintiff has failed to show anything more than temporary flawed judgment, which is not a major life activity under the ADA.  (Def's Memo at 16-21).  Therefore, Plaintiff is not "disabled" under the ADA or the PHRA and Counts II and III must be dismissed.  (Def's Memo at 16).

In Response, Plaintiff argues that her major life activities of thinking and concentrating, interacting with others, and sleeping are substantially limited by her bipolar disorder.  (Pl's Response at 18-20).  In support, Plaintiff offers her testimony that she has suffered suicidal

thoughts as a result of her mental impairment. (See Pl's Dep. at 22, 75; Ex. E at 1-2; Ex. F).

Plaintiff also testified that she attempted suicide on several occasions. (Pl's Dep. at 75; Ex. E at

1-2.)  Plaintiff also relies on a letter from Mark G. Agresti, M.D., P.A., dated February 12, 2003,

(Pl's Ex. X) stating that Plaintiff's "decision making abilities, judgment and insight may be

affected from time to time by her condition" and that Plaintiff "will most likely be on medication

for the rest of her life."  Plaintiff also relies on an MMPI-2 Adult Interpretive System (Pl's Ex. Y

at 3), indicating that Plaintiff "has difficulty with concentration...and her memory is poor."  Thus,

Plaintiff argues that a reasonable jury could conclude that she is substantially impaired in the

major life activities of thinking and concentrating as a result of her bipolar/major depressive

disorder.  (Pl's Response at 21-22).  Plaintiff also argues that a jury could conclude that she is

substantially impaired in the major life activities of interacting with others (Pl's Response at 23-

24) and sleeping (Pl's Response at 25).

     Further, Plaintiff argues she has presented enough facts that a reasonable jury could

conclude that Defendant discriminated against her when AFA failed and refused to provide her

with legal representation in connection with her grievance proceedings solely because of her

bipolar/major depressive disorder.  (Pl's Response at 26-27).  According to Plaintiff, these facts

include: 1) Attorney Brown stated she believed Plaintiff's case was problematic because Plaintiff

admitted to falsifying the medical bill (Pl's Response at 30); 2) Attorney Brown did not spend

enough time preparing for or discussing Plaintiff's case with her or preparing her to testify (Pl's

Response at 31); 3) Attorney Brown did not discuss an "impaired judgment" defense with

Plaintiff (Pl's Response at 30); 4) Attorney Brown did not seek a "second-chance agreement" for

Plaintiff (Pl's Response at 31); 5) Attorney Brown did not practice Plaintiff's arbitration

-10-

testimony with her (Pl's Response at 31); and 6) Attorney Brown advised Plaintiff that her felony

conviction would disqualify her from working as a flight attendant, rendering moot the outcome

of the arbitration even though Brown did not investigate the offense.  (Pl's Response at 32).

Plaintiff asserts there are multiple genuine issues of material fact including 1) whether Plaintiff is

"disabled" within the meaning of the ADA; and 2) whether Defendant discriminated against

Plaintiff on the basis of her disability in violation of the ADA.  (Pl's Response at 18).  Thus,

Plaintiff argues that summary judgment should be denied.

      In Reply, Defendant argues that Plaintiff has only produced unsworn expert reports that

do not meet the requirements of Federal Rule of Civil Procedure 56(e) and are not competent

evidence to be considered on summary judgment.  (Def's Reply at 7-9).  In addition, Defendant

relies on a medical assessment, dated September 13, 2004, from Dr. Mark Agresti, stating that

Plaintiff's "illness does not impair in any way. . . ."  (Def's Reply Ex. A).  Moreover, Defendant

argues that Plaintiff has not alleged any facts that indicate Defendant did anything but exercise its

discretion in handling Plaintiff's grievance proceedings.  (Def's Memo at 21-22).  Finally,

Defendants argue that even if Plaintiff has stated a prima facie case of discrimination under the

ADA, Plaintiff has not presented any evidence to show that Defendant's legitimate non-

discriminatory reasons were a pretext for discrimination.  (Def's Reply at 13).  Thus, Defendant

argues that it is entitled to summary judgment on Counts II and III.

## VI.    Discussion

###    A.    Breach of Duty of Fair Representation

      Initially, the Court disagrees with Defendant's argument that a union has no statutory duty

of fair representation.  The Third Circuit has expressly recognized and summarized such a

statutory duty:

> It is a fundamental axiom of federal labor law that a union's status
> as the exclusive bargaining representative of an employee carries
> with it a statutory obligation to serve the interests of all members
> without hostility or discrimination toward any, to exercise its
> discretion with complete good faith and honesty, and to avoid
> arbitrary conduct. . . . [A] breach of the statutory duty of fair
> representation occurs only when a union's conduct toward a
> member of the collective bargaining unit is arbitrary,
> discriminatory, or in bad faith.  In the context of a grievance
> proceeding, the rule is that a union may not arbitrarily ignore a
> meritorious grievance or process it in perfunctory fashion.  While
> the application of the "perfunctory" standard has proven difficult
> over time, we have recently made clear that whatever it may mean
> in other circumstances, mere ineptitude or negligence in the
> presentation of a grievance by a union has almost uniformly been
> rejected as the type of conduct intended to be included within the
> term "perfunctory."  What is required is a showing of actual bad
> faith or arbitrary conduct.

Riley v. Letter Carriers Local, 668 F.2d 224, 228 (3d Cir. 1981) (internal citations omitted).

With this standard in mind, the Court agrees with the Defendant that the Plaintiff has not

presented any evidence that AFA's conduct in handling her grievance was arbitrary,

discriminatory or in bad faith, such that a reasonable jury could conclude that Defendant

breached its duty of fair representation.  See Vaca v. Sipes, 386 U.S. 171, 190 (1967) ("A breach

of the statutory duty of fair representation occurs only when a union's conduct toward a member

of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."); Riley, 668 F.2d at

228 (summarizing union's duties in representing members); see also Bazarte v. United

Transportation Union, 429 F.2d 868, 872 (3d Cir. 1970) (stating that it is "essential to plaintiff's

claim that there should have been proof of arbitrary or bad-faith conduct on the part of the Union

in processing his grievance") (internal citations omitted).

-12-

A review of the relevant case law confirms Defendant's assertion that unions are afforded wide discretion in handling grievance proceedings.  See Bazarte, 429 F.2d at 872 (stating that "[a]n employee . . .is subject to the union's discretionary power to settle or even to abandon a grievance, so long as it does not act arbitrarily, . . . even if it can later be demonstrated that the employee's claim was meritorious.").  Moreover, an individual employee does not have an absolute right to have his grievance taken to arbitration.  Vaca v. Sipes, 386 U.S. at 191.  In Vaca, the Supreme Court stated:

> [T]he union [has] discretion to supervise the grievance machinery .
> . . .  If the individual employee could compel arbitration of his
> grievance regardless of its merit, the settlement machinery
> provided by the contract would be substantially undermined, thus
> destroying the employer's confidence in the union's authority and
> returning the individual grievant to the vagaries of independent and
> unsystematic negotiation.  Moreover, under such a rule, a
> significantly greater number of grievances would proceed to
> arbitration.  This would greatly increase the cost of the grievance
> machinery and could so overburden the arbitration process as to
> prevent it from functioning successfully.

Id. at 191-192.

Furthermore, under Supreme Court and Third Circuit precedent, negligence is not enough to show a breach of the union's duty of fair representation.  See United Steelworkers of America v. Rawson, 495 U.S. 362, 372-73 (1990) (endorsing the view that mere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation); Findley v. Jones Motor Freight, Etc., 639 F.2d 953, 960 n.2 (3d Cir. 1981)(vacating district court's judgment in favor of plaintiff employee, concluding that the evidence failed to establish that the union breached its duty of fair representation and directing entry of judgment for the defendants).  In Findley, the Third Circuit stated that "[m]ere ineptitude

-13-

or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct intended to be included within the term 'perfunctory.'"[2] Id.  See also Bazarte, 429 F.2d at 872 ("proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation").

With this case law in mind, the Court concludes that, even when viewed in a light most favorable to Plaintiff, the evidence, at worst, only allows the inference that the union's representation was negligent.  This includes evidence that the union attorney did not investigate whether Plaintiff was really convicted of felony shoplifting before she offered resignation as an option and the fact that other options, such as a "last-chance" agreement, were not discussed with Plaintiff.   Under controlling law, these facts are not enough to support a claim of unfair representation.  Bazarte, 429 F.2d at 872.

The summary judgment record shows nothing more than an attorney evaluating the case before her and offering her opinion as to its merit.  (Brown Dep. at 45, 59).  It is true that Brown did not pursue an "impaired judgment" defense or "last-chance" agreement, did not discuss having an expert testify at the arbitration as to the effects of the medication Plaintiff was using, and did not call Plaintiff's treating physician.  (Brown Dep. at 46, 49, 78).  But, it is also true that both Plaintiff and Brown testified that Brown informed Plaintiff that resignation was an option because it would save her from having a termination on her employment record and help Plaintiff secure future employment.  (Pl's Dep. at 112; Brown Dep. at 61).  Based on her experience in grievance proceedings, the fact that Plaintiff admitted to falsifying a medical document, and that

---

[2] In Vaca, the Supreme Court stated that "a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion."  386 U.S. at 191.

Plaintiff informed Brown that she had a felony shoplifting conviction, Brown made a strategic decision.  "The fact that trained counsel would have avoided the error or pursued a different strategy is not enough" to breach the union's duty.  <u>Findley</u>, 639 F.2d at 955, 961.

Because Plaintiff has failed to present any evidence that Defendant's conduct in handling her grievance was arbitrary, discriminatory or in bad faith, such that a reasonable jury could conclude that Defendant breached its duty of fair representation, summary judgment will be granted in favor of Defendant AFA on Count I.

### B.        Americans with Disabilities Act

The Third Circuit has held that when there is no direct evidence of discrimination, the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), applies to ADA claims.[3]  <u>See</u> <u>Walton v. Mental Health Ass'n of Southeastern Pa.</u>, 168 F.3d 661, 667-68 (3d Cir. 1999)(affirming district court's grant of summary judgment in favor of defendant). Under the <u>McDonnell Douglas</u> analysis, the plaintiff must first establish a prima facie case of discrimination.  Then, the burden of production shifts to the defendant who must present a legitimate non-discriminatory reason for its actions.  The final burden of persuasion is on the plaintiff, who must present evidence that the defendant's proffered reasons for its actions are pretext for discrimination.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802-05; <u>Walton</u>, 168 F.3d at 668 (summarizing burden-shifting process).  The Court necessarily considers the shifting burdens when deciding a motion for summary judgment.

---

[3]At oral argument, the parties conceded that the <u>McDonnell Douglas</u> framework applies to Plaintiff's ADA claim.

### 1.    Prima Facie Case

First, to establish a prima facie case of discrimination under the ADA, a plaintiff must show that 1) she is "disabled" within the meaning of the ADA;[4] 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and 3) she suffered an adverse employment decision as a result of discrimination.  Taylor, 184 F.3d at 306 (reversing grant of summary judgment in favor of defendant).

In this case, Plaintiff claims that she is disabled under the ADA because she suffers from a mental impairment that substantially limits one or more of her major life activities.  (Pl's Response at 18).  Defendant concedes that Plaintiff suffers from bipolar/major depressive disorder, which is a mental impairment within the meaning of the ADA.  (Def's Memorandum at 14-16; Pl's Dep. at 21).  The contested issue is whether Plaintiff's bipolar disorder substantially limit a major life activity, as required under 42 U.S.C. § 12102(2)(A).  (Def's Memo at 14-21).  To resolve this issue, courts must conduct an individualized assessment, "by identifying the specific life activity or life activities that [Plaintiff] says her disorder affected and then evaluate whether her condition 'substantially limits' those life activities."  Taylor, 184 F.3d at 306-07 (citing Albertsons, Inc. v. Kirkingburg, 527 U.S. 555, 556 (1999)).  Even though this point is disputed, a review of the summary judgment record and controlling Third Circuit law leads this Court to conclude that there is a genuine issue of material fact as to whether Plaintiff is disabled

---

[4] Under the ADA, the term "disability" is defined as
> (A) a physical or mental impairment that substantially limits one or
> more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

within the meaning of the ADA.

In Taylor, the plaintiff sued her former employer, the Phoenixville School District, alleging that the defendant failed to provide her with reasonable accommodations for her mental illness, diagnosed as bipolar disorder. Taylor, 184 F.3d at 301-02. The Third Circuit expressly recognized "thinking" as a major life activity and found that a genuine issue of material fact existed as to whether the plaintiff's bipolar disorder substantially limited this major life activity. Id. at 307-08. The court concluded that, despite being on medicine, Plaintiff presented enough evidence that "the drug has not perfectly controlled her symptoms, leaving her still substantially limited in her ability to think." Id. at 308. Thus, the Third Circuit reversed the district court's grant of summary judgment in favor of the defendant. Id. at 320.

Similarly, in Bennett v. Unisys Corp., the plaintiff sued her former employer, Unisys, alleging that the company failed to accommodate her and terminated her because of her mental disability in violation of the ADA and PHRA. 2000 U.S. Dist. LEXIS 18143, *1 (E.D. Pa. 2000). Noting that the Third Circuit has been "generally unwilling to take a narrow view of what constitutes a 'major life activity,'" the court found that Bennett successfully identified three major life activities: interacting with others, sleeping and thinking. Id. at *16. With regard to interacting with others, Bennett presented evidence that she was "belligerent and displayed an unprofessional attitude," "[s]he had difficulty controlling her emotions," had paranoia, and "was incredibly sensitive to criticism." Id. at 18-19. With regard to sleeping, Bennett testified that she suffered "from sleep disturbances and occasional insomnia." With regard to thinking and concentrating, Bennett produced evidence that "she misunderstood assignments," "produced a document that generally did not make any sense," and that "her thoughts were distorted and that

she had difficulty concentrating." Id. at *24.  Judge Van Antwerpen denied summary judgment finding that the plaintiff raised genuine issues of material fact concerning whether Bennett was disabled under the ADA.  Id. at *13-14.  The court held that a reasonable jury could conclude that Bennett's depression constituted a mental impairment that substantially limited the major life activities of interacting with others, sleeping, and thinking.  Id.

Taylor and Bennett are instructive in this case where the Plaintiff argues that her major life activities of thinking and concentrating, interacting with others, and sleeping are substantially limited by her bipolar/major depressive disorder.  (Pl's Response at 18-20).  These three activities have all been recognized as major life activities.  See Taylor, 184 F.3d at 307-08; Bennett, 2000 U.S. Dist. LEXIS 18143 at *13-14; see also EEOC, U.S. Dep't of Labor, Notice Number 915.002, Enforcement Guidance on the ADA and Psychiatric Disabilities (1997).  Thus, the court turns to whether Plaintiff's bipolar disorder substantially limits any of these major life activities.

The EEOC's regulations instruct that a mental impairment substantially limits a major life activity when a person is:

> i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. §1630.2(j)(1).  The regulations also state that when determining whether an individual is substantially limited in a major life activity, the following factors should be considered:

> (i) The nature and severity of the impairment;
> (ii) The duration or expected duration of the impairment; and
> (iii) The permanent or long term impact, or the expected permanent
> or long term impact of or resulting from the impairment.

29 C.F.R. §1630.2(j)(2); <u>see also</u> <u>Taylor v. Phoenixville School District</u>, 184 F.3d 296, 307 (3d Cir. 1999) (citing factors).

Applying <u>Taylor</u>, <u>Bennett</u>, and the EEOC regulations to this case, the Court concludes that there are sufficient facts from which a reasonable jury could conclude that Plaintiff is disabled under the ADA.  In making this decision, the Court relies on the Plaintiff's own testimony and places no weight on the medical evidence submitted by Plaintiff as it does not conform to Federal Rule of Civil Procedure 56(e), which requires that such evidence be submitted by affidavit.  Plaintiff's own testimony regarding the effects of her mental impairment is sufficient to create a genuine issue of material fact in order to survive a motion for summary judgment.

Specifically, Plaintiff has presented evidence that she is substantially impaired in the major life activity of thinking.  For example, Plaintiff testified that she has suffered suicidal thoughts, eaten pesticide, and attempted suicide as a result of her mental impairment. (See Pl's Dep. at 22, 75).  Plaintiff also testified that she was like a "zombie" and "could not function" at times.  <u>Id.</u> at 21-23, 71.  Given this testimony, it is questionable whether Plaintiff is able to perform the major life activity of thinking on par with an average person in the general population.  The court finds that this is sufficient evidence from which a reasonable jury could conclude that the Plaintiff's mental impairment was of such severity, duration and permanence that Plaintiff is substantially impaired in the major life activity of thinking.

-19-

The Court also concludes that the Plaintiff has presented sufficient evidence to create a genuine issue of material fact regarding whether she is substantially impaired in the major life activities of interacting with others and sleeping.  Plaintiff testified that she would "lose it" while waiting in long lines at the store, id. at 73-74; that she had "trouble with the law" and commonly made mistakes in her personal and romantic life.  Id. at 71.  Plaintiff also testified that in 2001, she would come home from a flight and "wouldn't get out of bed and just cry and rock [herself] to sleep. . . ."  Id. at 28.  Plaintiff also stated that during her "high" periods she didn't need any sleep, but, during her "low" periods, she needed so much sleep that she could not function.  Id. at 22.  The Court finds that this is sufficient evidence from which a reasonable jury could conclude that the Plaintiff is significantly restricted in her ability to sleep and interact with others as compared to the average person in the general population.  Thus, there is a genuine issue of fact whether Plaintiff's mental impairment substantially limited her major life activities of interacting with others and sleeping.

Because the parties concede that Plaintiff suffers from a mental impairment and the Court finds that there are genuine issues of material fact whether Plaintiff's major depressive disorder substantially limits one or more major life activities, a reasonable jury could find that Plaintiff is disabled within the meaning of the ADA.

Nevertheless, the Court concludes that the Plaintiff has not established a prima facie case of discrimination.  Under the third prong of the prima facie case,[5] Plaintiff must show causation, i.e., she must show that she was subjected to adverse treatment "because of" her disability.  42 U.S.C. § 12112(a).  See Newman v. GHS Osteopathic, 60 F.3d 153, 157 (3d Cir. 1995) (holding

---

[5] See supra p. 16 (listing elements of prima facie case).

that case law regarding Title VII and the ADEA informs the standards of causation under the

ADA); see also Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999) (rejecting a "solely because of"

causation standard and indicating that to recover under the ADA, a plaintiff must demonstrate

that impermissible discrimination was a motivating factor) (emphasis added); Smith v. Upson

County, 859 F. Supp. 1504, 1514 (M.D. Ga. 1994) (holding that an ADA plaintiff must show

some "causal connection" between disability and adverse employment action).  The Plaintiff,

however, has failed to present any evidence from which a jury could find a causal connection

between her termination, resignation, or the union's withdrawal of her grievance and her

disability.[6]  "Plaintiff has merely made broad, conclusory allegations attacking the motivations of

defendants.  These unsupported allegations do not create a question of fact for the jury as to the

causation element of plaintiff's prima facie case."  Id. at 1515.

Although Plaintiff argues that her inferences are sufficient, none of the facts underlying

her inferences have anything to do with her disability and there is no evidence to show that

Defendant AFA discriminated against her because of her disability, or that she suffered an

adverse employment decision as a result of discrimination, as required under the third prong of

the prima facie case.  Taylor, 184 F.3d at 306.  This includes the fact that Plaintiff falsified a

medical document (Pl's Dep. at 58:2-16; 70:11-13); USAir, not Defendant AFA, terminated

---

[6] The adverse employment actions for which the Plaintiff claims AFA is responsible
include: 1) her loss of her rightful opportunity to seek reinstatement; 2) loss of earnings; and 3)
loss of future earning power.  Amended Complaint at ¶23.  Assuming arguendo that these items
amount to "adverse employment actions," Plaintiff has not shown that there is a sufficient causal
link between any of these events and the Defendant's actions in order to survive summary
judgment.  It is undisputed that Defendant AFA counseled and represented the Plaintiff in her
grievance proceedings, however, because AFA was the Plaintiff's labor union and not Plaintiff's
employer, AFA had no direct control over Plaintiff's employment status, thus, making the
causation component even more difficult to satisfy.

Plaintiff's employment for providing false information to the company (Pl's Dep. at 59:20-60:5; Pl's Ex. B - termination letter from USAir); USAir expressly considered Plaintiff's depression and "impaired judgment" defense but decided that it did not absolve her from her actions and therefore, denied her grievance (Pl's Ex. J: Letter dated January 7, 2002 from Robert Fuhr to Plaintiff); and Plaintiff told Attorney Brown that she had a felony shoplifting conviction (Pl's Dep. at 114).[7]  Furthermore, AFA had no control over whether USAir would reinstate Plaintiff if the arbitration occurred as scheduled.  Even if there was a successful grievance procedure, there is no assurance that USAir would have changed its decision, especially considering the fact that USAir had previously upheld its decision.  (Pl's Ex. J).  Thus, the Court finds that there is an insufficient factual and causal link that would allow a jury to find that any action taken by Defendant AFA was because of discrimination or was the cause of Plaintiff not being reinstated

---

[7] At oral argument, the Court asked the parties to submit evidence regarding the level of the shoplifting offense and the parties have complied.  After reviewing the documents submitted by counsel on both sides, the Court concludes that whether Plaintiff's shoplifting offense constitutes a felony conviction or not is irrelevant to deciding this motion.  The record shows that upon being told by Plaintiff that the conviction was for a felony, Attorney Brown either stated that resignation was an option or suggested that Plaintiff resign in order to avoid a termination on her employment record.  (Pl's Dep. at 114, 118; Brown Dep. at 33-35).  Although Brown did not independently confirm the information, she had no reason to disbelieve the Plaintiff.  Accepting the Plaintiff's argument that a prudent attorney may have further researched the matter, there is simply no evidence whatsoever that Brown's failure to do so was even remotely motivated by Plaintiff's mental impairment or discriminatory animus.  The fact that an attorney suggests one strategy over another is not, in and of itself, enough to infer discriminatory intent.  See Kautz, 2005 U.S. App. LEXIS 11559 at *9 (noting that "the factual issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.") (quoting Fuentes, 32 F.3d at 765); see also Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination.").

by USAir.[8]

Because Plaintiff has not shown causation, Plaintiff has failed to establish her prima

facie case of discrimination.  Thus, Counts II and III could be dismissed at this point, without any

further analysis.

### 2.    Defendant's Legitimate Non-Discriminatory Reason

Assuming, arguendo, that the Plaintiff has presented sufficient evidence to establish a

prima facie case, it is clear that the case would not survive the balance of the McDonnell Douglas

analysis.  As stated above, after a plaintiff establishes a prima facie case of discrimination, the

burden of production shifts to the defendant who must present a legitimate non-discriminatory

---

[8]Plaintiff has not only failed to satisfy the causation requirements under the prima facie case, but has also failed to satisfy the constitutional standing requirement of causation.  See Green v. Joy Cone Co., 107 Fed. Appx. 278, 281 (3d Cir. 2004) (non-precedential) (finding that the plaintiff did not have standing to assert ADA claim because there was no injury in fact and plaintiff failed to satisfy the causation requirements necessary for standing that is a condition precedent to court's jurisdiction under Article III); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) (summarizing constitutional standing requirements).  In Steel, the Supreme Court explained:

> The irreducible constitutional minimum of standing contains three requirements.  First and foremost, there must be alleged (and ultimately proven) an "injury in fact" -- a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be causation -- a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.  And third, there must be redressability -- a likelihood that the requested relief will redress the alleged injury.  This triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

Steel, 523 U.S. at 102-104.
     In this case, Plaintiff has not shown any "traceable connection" between her injury and the Defendant's conduct.  Therefore, Plaintiff has failed to meet the constitutional standing requirement of causation.

-23-

reason for its actions.  The Court finds that the Defendant has stated such a reason for its actions.

Specifically, Defendant AFA presents evidence that after Attorney Brown informed Plaintiff that a felony conviction would preclude her from working as a flight attendant under FAA security regulations and that a resignation would be better than a termination on her employment record, Plaintiff resigned and Defendant canceled the arbitration and terminated the grievance process.  (See Brown Dep. at 33-45, 60, 75-77; Pl's Ex. U: Letter from Brown to Plaintiff; 49 C.F.R. §1544.229(d)(26)(iv); 49 C.F.R. §1544.230(b)).

Attorney Brown also stated that she did not pursue a second-chance agreement or "impaired judgment" defense for Plaintiff because, based on her experience, 1) USAir would not agree to a second-chance agreement based on the merits of the case; 2) normally, if USAir is interested in a second-chance agreement, it would be reached before the case gets to the arbitration level; 3) Brown had never sought a second-chance agreement for any union member at this point in the process; and 4) Brown knew that arbitrators don't consider impaired judgment as enough mitigation to reinstate an employee who falsified a Workers' Compensation claim. (Pl's Ex. S: Brown Dep. at 46, 58, 78-79).

The Court finds these reasons sufficient to satisfy Defendant's burden of production at this stage of the analysis and establish legitimate, non-discriminatory justifications for AFA's actions.  See Fuentes v. Perksie, 32 F.3d 759, 763 (3d Cir. 1994) (setting forth the criteria for establishing a legitimate, non-discriminatory justification).

### 3.    Pretext

#### a.    Standard

Once a defendant satisfies this burden, in order to survive summary judgment, the

plaintiff must present evidence that the defendant's proffered reasons for its actions are pretext

for discrimination.  See Walton, 168 F.3d at 668.  In Walton, the Third Circuit explained:

> [T]o defeat summary judgment, [a plaintiff] had to point to some
> evidence, direct or circumstantial, from which a fact finder could
> reasonably either (1) disbelieve the employer's articulated
> legitimate reasons; or (2) believe that an invidious discriminatory
> reason was more likely than not a motivating or determinative
> cause of the employer's action.  These options enable a plaintiff to
> survive summary judgment, without direct evidence, by producing
> sufficient evidence to raise a genuine issue of fact as to whether the
> employer's proffered reasons were not its true reasons for the
> challenged employment action.

Walton, 168 F.3d at 668 (internal citations omitted); see also Fuentes v. Perksie, 32 F.3d 759,

763-64 (3d Cir. 1994) (explaining pretext).

The Third Circuit recently noted that the "standard for proving pretext . . . 'places a

difficult burden on the plaintiff.'"  Kautz v. Met-Pro Corp., 2005 U.S. App. LEXIS 11559, *7

(3d Cir. June 17, 2005) (affirming grant of summary judgment in favor of defendant because

plaintiff failed to show pretext) (citing Fuentes, 32 F.3d at 765).  In Kautz, the Third Circuit

explained the plaintiff's final burden of persuasion:

> In order to avoid summary judgment, Fuentes requires a plaintiff to
> put forward such weaknesses, implausibilities, inconsistencies,
> incoherencies, or contradictions in the employer's proffered
> legitimate reasons for its action that a reasonable factfinder could
> rationally find them unworthy of credence.

Kautz, 2005 U.S. App. LEXIS 11559 at *7.  "However, in discrediting the defendant's proffered

reason, the plaintiff cannot simply show that the defendant's decision was wrong or mistaken

because the factual dispute at issue is whether discriminatory animus motivated the defendant's

actions."  Andy v. United Parcel Service, 2003 U.S. Dist. LEXIS 25193, *6 (E.D. Pa. 2003)

aff'd, 111 Fed. Appx. 670 (3d Cir. 2004) (non-precedential) (upholding district court's grant of summary judgment).

With this standard in mind, the Court finds that the Plaintiff has failed to present any evidence from which a reasonable jury could conclude that Defendant's stated reasons for its actions were pretextual.

### b. Plaintiff Failed to Carry Her Burden that Defendant's Proffered Legitimate, Non-Discriminatory Reason was Fabricated or That Defendant's Actions were More Likely Than not Motivated by Discriminatory Animus

After a careful review of the record, this Court concludes that Plaintiff presents no evidence to cast any doubt on the credibility of Defendant's legitimate, non-discriminatory reasons for its actions.

First, Plaintiff has not shown that Defendant's stated reason for canceling the arbitration and terminating the grievance process, i.e., that Plaintiff chose to resign because a felony conviction would preclude her from working as a flight attendant under FAA regulations, was fabricated or not credible. To the contrary, Plaintiff readily admits that she told Brown that she had a felony conviction. (Pl's Dep. at 114). Attorney Brown then either stated that resignation was an option or suggested that Plaintiff resign in order to avoid a termination on her employment record. (Pl's Dep. at 114, 118; Brown Dep. at 33-35). Although Plaintiff may have been mistaken about the level of the shoplifting offense, Brown did not fabricate the information or the FAA security regulations, which preclude a person with a felony conviction involving theft from working as a flight attendant. See 49 C.F.R. §1544.229-1544.230.

Moreover, Plaintiff fails to point to any inconsistencies in Defendant's proffered

explanation strong enough to overcome the evidence that no discrimination occurred.  Plaintiff

relies primarily on inferences that could be drawn from the failure of Defendant to pursue a

second-chance agreement or an "impaired judgment" defense.  In addition, when asked at oral

argument, Plaintiff could only cite one incident that was remotely connected to Plaintiff's mental

status.  Plaintiff testified that during the October 23, 2002 meeting with Attorney Brown,

Plaintiff started crying and Brown allegedly stated, "that's what I'm concerned that's going to

happen to you on the stand, when the US Airways attorney questions you [at the arbitration]."

(Pl's Dep. at 113-14).  This assessment is hardly enough to infer any inconsistencies with

Defendant's legitimate non-discriminatory reasons for its actions, i.e., that based on Brown's

experience, USAir and the arbitrator would not consider a second-chance agreement or an

impaired judgment defense.  Plaintiff has not only failed to cast any doubt on Defendant's

proffered reasons, but the statement allegedly made by Brown supports Defendant's argument.  It

is common practice for an attorney to assess the merits of a case, the strength of witnesses, and

how a witness will perform under cross-examination.  Plaintiff's evidence simply shows that

Attorney Brown was doing her job.

Furthermore, the Supreme Court has held that judgment as a matter of law would be

appropriate "if the plaintiff created only a weak issue of fact as to whether the employer's reason

was untrue and there was abundant and uncontroverted independent evidence that no

discrimination had occurred."  Andy, 2003 U.S. Dist. LEXIS 25193, 22-23 (quoting Reeves v.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)).  In the present case, that Attorney

Brown did not independently investigate the level of the shoplifting offense; was concerned that

Plaintiff began crying during a meeting; did not pursue an "impaired judgment" defense; and did

not pursue a second-chance agreement present little more than "weak issue[s] of fact" as to the credibility of AFA's legitimate, non-discriminatory reason for its action.

Additionally, Defendant has presented this Court with abundant, uncontroverted evidence that no discrimination occurred. For instance, Plaintiff admits that she falsified the medical bill she submitted to USAir. (Pl's Dep. at 41). Plaintiff also told Attorney Brown she had a felony shoplifting conviction on her record, which would have prevented USAir from reinstating her under FAA regulations. Id. at 114:9-17. Plaintiff also signed the Resignation Agreement on January 23, 2003, giving her three months after her meeting with Attorney Brown to consider her actions. (Def's Ex. J: Resignation Agreement). Brown canceled the arbitration scheduled for November 6, 2002 after Plaintiff decided to resign. (Pl's Dep. at 124; Pl's Ex. U: letter from Brown to Plaintiff, dated January 9, 2003). After receiving Plaintiff's executed resignation agreement, Defendant withdrew Plaintiff's grievance. (Pl's Ex. W: letter from Soler-Bryant to Sharon Hendry, dated March 11, 2003). These uncontroverted facts are strong evidence supporting the Defendant's contention that no discrimination occurred.

The Court, therefore, holds that Plaintiff has not satisfied the Fuentes standard to show pretext because it is not implausible, inconsistent, incoherent or contradictory for a union attorney to evaluate the merits of a case and to offer Plaintiff the option of resigning given information available at the time.[9] Similarly, it is not inconsistent for a union attorney to terminate grievance proceedings once a grievant has decided to resign. Because Plaintiff has

---

[9] The Court agrees with the Defendant that, under the controlling case law, Attorney Brown not only had discretion to take these actions, but she was obligated to do so because, under Rule 2.1 of the Pennsylvania Rules of Professional Conduct, she owed Plaintiff a duty of candor and honesty.

failed to present any inconsistencies and has failed to rebut Defendant's legitimate non-discriminatory reasons for its actions, Plaintiff has failed to carry her burden of showing that Defendant AFA's proffered legitimate reasons were pretextual and that its actions more likely than not were motivated by discriminatory animus.  Thus, Counts II and III must be dismissed.

**VII.    Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTINA CAMBRIA, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | NO. 03-cv-5605 |
| ASSOCIATION OF FLIGHT ATTENDANTS, | : | |
| AFL-CIO, | : | |
| Defendant | : | |

### ORDER

AND NOW, this   30th      day of June, 2005, based on the foregoing memorandum and

upon consideration of Defendant AFA's Motion for Summary Judgment (Doc. No. 25), it is

hereby ORDERED that the Defendant's Motion is GRANTED.  Judgment is hereby entered in

favor of Defendant AFA and against Plaintiff.  The Clerk of Court is directed to mark this case as

closed.



**BY THE COURT:**

**/s/ Michael M. Baylson**

_____

**MICHAEL M. BAYLSON, U.S.D.J.**



A:\03-5605, Cambria v AFA MSJ.wpd